James H. Seymour  SBC No. 048651
706 Cowper Street
Palo Alto, California  94301
Telephone:  (650) 323-7226
Counsel for Appellant
Jennifer M. Moore

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. 07-03716 CBR |
| ALLIANCE FINANCIAL CAPITAL HOLDINGS, INC., | Appeal from USBC (N.D. Cal.) No.  07-30030  TEC  7 |
| Alleged Debtor. | **OPENING BRIEF OF APPELLANT JENNIFER M. MOORE** |
| JENNIFER M. MOORE, | |
| Appellant, | |
| vs. | |
| RICHARD L. HATFIELD, FIRST TRUST CORPORATION FBO RICHARD L. SPEES FIRST TRUST CORPORATION FBO J.D. ERICKSON, and GEORGE RNJAK, | |
| Appellees. | |

## INTRODUCTION

Appellant Jennifer M. Moore (Moore) appeals from the order of the Honorable Thomas E. Carlson, United States Bankruptcy Judge for the Northern District of California dismissing the captioned involuntary bankruptcy case which was brought against alleged debtor and appellee Richard L. Hatfield (Hatfield) under Chapter 7 of the

Bankruptcy Code.  The involuntary petition was filed by appellees First Trust Corporation Fbo Richard L. Spees, First Trust Corporation Fbo J.D. Erickson, and George Rnjak. (Collectively, the Petitioners.)

Contemporaneously with the filing of the involuntary bankruptcy petition against Hatfield, the Petitioners filed a similar petition against Alliance Financial Capital Holdings, Inc. (AFCH).

After several months of negotiations, Petitioners and Hatfield believed they had concluded a settlement (Settlement) (Hatfield Record on Appeal (ROA), Doc. 13, Ex. A and AFCH Record on Appeal (ROA), Doc. 12, Ex. A), which by design did not include appellant Moore as a party, providing for, among other things, that the Petitioners would seek dismissal of both their involuntary petitions. *Ibid.* at p. 6, ¶7.

In response to a motion brought by the Petitioners, the dismissal was ordered by the bankruptcy court pursuant to the discretionary authority granted by sec. 305 of the Bankruptcy Code (11 U.S.C., sec. 305) allowing the dismissal of a bankruptcy case if the court finds "the interests of creditors and the debtor would be better served by such dismissal."  11 U.S.C., sec. 305(a)(1).

Appellant Moore is a substantial creditor of alleged debtors Hatfield and AFCH who unsuccessfully opposed the Petitioners' motions to dismiss.  Although they were determined to have never been legally married, Moore and Hatfield lived together for thirteen years during which time they founded and worked together in a factoring business operated by Alliance Financial Capital, Inc. (AFC).  Hatfield, ROA, Doc. 15, Att. 2 at pp.2-3.  They separated in 2001, and since then, Hatfield alone has operated and controlled the factoring business and all their assets, including homes in South San Francisco and Woodside.  *Ibid*.  Following a *Marvin* trial of their property rights, it was determined they equally own everything acquired during their thirteen years together.  *Ibid*.

Working capital for the factoring business was obtained, in part, by borrowing from private parties on promissory notes.  *Id*. at p. 4, ¶15.  Each of the Petitioners lent money

to the business in exchange for one or more promissory notes, which Hatfield personally guaranteed. *Ibid*.

In addition to AFC and AFCH, promissory notes were issued by Industry Funding Corporation. *Id*. at ¶16-18.

The Settlement provides for payment of $2 million in full satisfaction of promissory note obligations of more than $8.4 million, all of which is guaranteed by Hatfield. *Id*. at p. 4, and Hatfield ROA, Doc. 13, Ex. A at p.30 (The amounts in Amount Due column total over $8.4 million.)  The payment is to be generated by the sale of AFC's assets. Hatfield ROA, Doc. 15, Att. 2, p. 8, ¶¶54-55.

Moore had several reasons for opposing the motions to dismiss:

1.    The Settlement uses the assets of a corporation, AFC, which Moore and Hatfield jointly own, to obtain a full release of Hatfield's potential personal liability of more than $8.4 million.  Hatfield ROA, Doc. 13, Ex. A at p.30 (The amounts in Amount Due column total over $8.4 million.)  At the same time the Settlement provides that Moore remains fully obligated on a purported guarantee by her of $1.15 in loans to the factoring business.  Hatfield ROA, Doc. 25, p. 2, ¶8.  Hatfield is fully released from his obligation on this joint guarantee.  Hatfield ROA, Doc. 13, Ex. A at p. 2, ¶IIIA.

2.    Moore remains the sole director and a 50% shareholder of AFC, the assets of which are to fund the Settlement and without her approval, the Settlement cannot be binding on AFC.  Hatfield ROA, Doc. 15, Att. 2, p. 3, ¶¶12-13.

3.    There was no certainty the Settlement could be consummated, and dismissal of the bankruptcy cases would eliminate the power to avoid preferential transfers by Hatfield to a personal friend, Melvin Slager, or business names used by Slager, which total $960,000.  Hatfield ROA, Doc. 25, pp. 2-3, ¶¶4-7.

4.    Hatfield was spending corporate funds for his benefit at the rate of $33,000 per month in addition to his salary.  Hatfield ROA, Doc. 25, p. 4, ¶17, Ex. H.  Without a receiver or bankruptcy trustee to control Hatfield's use of corporate funds, resolution of the competing financial claims is not possible.

5.     An application for a state court receiver was denied with a suggestion by the state court judge that bankruptcy was an appropriate alternative.  Hatfield ROA, Doc. 15, Att. 2, p. 8,  ¶51.

## Standard of Review

"A bankruptcy court's decision regarding abstention or dismissal under § 305(a) involves a mixed question of fact and law, which the Ninth Circuit Bankruptcy Appellate Panel reviews *de novo*. *In re Eastman*, 188 B.R. 621, 624 (9th Cir. BAP 1995)." *In re Edwards*, 214 B.R. 613, 618 (9th Cir. BAP 1997).  As a court of review, this Court stands in the same posture as the Bankruptcy Appellate Panel.

## Procedural History

The Petitioners filed their petitions against AFCH and Hatfield on 9 January 2007. Hatfield ROA, Doc. 1 and AFCH ROA, Doc. 1.  The bankruptcy court combined the cases as related matters and they were assigned to the same judge, the Hon. Thomas Carlson.  Shortly thereafter, Moore removed the state court litigation to the bankruptcy court on 29 January.  Hatfield ROA, Doc. 3 and AFCH ROA, Doc. 3.

Hatfield answered the involuntary petition against him on 1 February 2007 (Hatfield ROA, Doc. 4), but AFCH defaulted and has never appeared in response to the petition against it.

At a status conference on 2 February 2007, counsel for the Petitioners announced they were attempting to negotiate a settlement with Hatfield.  The bankruptcy court then *sua sponte* suspended the bankruptcy cases pursuant to the authority of 11 U.S.C., sec. 305(a)(1).[1]  Hatfield ROA, Doc. 5 and AFCH ROA, Doc. 4.

---

[1]11 U.S.C., sec. 305 provides in pertinent part:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or

(continued...)

Status conferences were held on 22 February and 12 March 2007.  At the 12 March status conference, counsel for the Petitioners and Hatfield announced they had reached a settlement which they wished to submit to the state court.  The bankruptcy court then conditionally remanded the cases which Moore had removed from state court. Hatfield ROA, Doc. 11, and AFCH ROA, Doc. 10.

Following a "good faith" settlement determination in state court, the Petitioners moved for dismissal of their petitions against Hatfield and AFCH.  Hatfield ROA, Docs. 13 and 14 and AFCH ROA, Docs. 12 and 13.

Moore moved to terminate the suspension which had been ordered by the bankruptcy court *sua sponte* on 2 February.  Her motion was in part based on the absence of any authority for Hatfield to bind AFC to the Settlement without her approval as sole director and 50% shareholder.  Hatfield ROA, Doc. 15, Att. 1, p. 2.

After Moore submitted her opposition to the Petitioners' motion to dismiss, and they opposed her motion to terminate the suspension of the cases, a hearing was held on 22 June.  The court ruled from the bench and stated its findings and conclusions on the record as follows:

> "I'm going to dismiss both cases under Section 305.  Let me note the following - can you hear me all right?  Okay.  First of all, I believe the notice is sufficient under Rule 2002.  If not all creditors have been given notice here, it is because of the fact that this is often difficult in involuntary cases. The debtor has not filed schedules. I've received no evidence that any major creditors have not been - been notified.  We've - service has been on everybody who has shown any interest in this case. And I think Rule 2002 has to be applied practically.  I believe the creditors of both the debtor and of Alliance Financial Capital Holdings would be better served by the state

---

[1](...continued)
suspension;

1  court settlement in which the parties were assisted by a state court judge
2  and by the state court proceedings involving the Marvin action in the claims
3  between Mr. Hatfield and Ms. Moore. That Ms. Moore doesn't receive any
4  payment under the settlement of AFCH does not suggest that that
5  settlement is not the best approach, because the settlement deals with
6  creditors of that alleged debtor.  Her real interest, if any, is in the nature of
7  an equityholder, which is, of course, subordinate to creditors. And creditors
8  are not being paid in full in this matter. This matter is quite, quite simple
9  with respect to AFCH.  I also find that the creditors and debtor, Richard
10 Hatfield, are also better served.  The settlement results in no transfer of
11 assets of Mr. Hatfield to anyone.  The settlement results in the reduction of
12 potential claims against Mr. Hatfield by the release of the guaranties.  Most
13 important this is, in substance, the Hatfield case, other than the fact that
14 there were these guarantees out there, from everything  I've heard is in the
15 nature of a two-party dispute between Mr. Hatfield and his former spouse-
16 like person under - under the Marvin case. And I think it's best dealt with
17 in the ongoing state court action.  Lastly, I note that the joinder in the
18 petition by Ms. Moore and two other creditors, who all have - those other
19 two creditors are asserting minor claims - doesn't really have any doesn't
20 prevent abstention under Section 305.  Section 305 allows abstention even
21 where it's been established that an order for relief would otherwise be
22 granted. It hasn't been determined one way or another whether the order
23 for relief would otherwise be entered against Mr. Hatfield here.  But I find
24 that, even if it were, the interests of the parties are better served as - with
25 allowing these matters to go - be resolved in state court.  So I will enter
26 orders dismissing both under Section 305."  Reporter's Transcript, 22 May
27 2007; 22:4-24:1.
28 The following dialogue then occurred between the court and counsel for Moore:

MR. SEYMOUR: May I ask a question, Your Honor?

THE COURT: Yeah.

MR. SEYMOUR: If the state court - the state appellate court, throws out the good-faith finding, does that have any effect on Your Honor's decision, because the settlement can't go forward. That's a condition of the settlement.

THE COURT: Well, the settlement can't go forward. The parties are probably going to have to do something else.

MR. COOPER: That's not correct, Your Honor. The settlement payment is due on July 10th. There is no condition that it'd be a final Court order by the state court. The settlement payment is due July 10th.

MR. SEYMOUR: That wasn't my point, Your Honor. My point was that the good-faith finding is a condition of the settlement. And if the good-faith finding is -

THE COURT: I think -

MR. SEYMOUR: nullified, then the agreement, the condition - consideration fails.

THE COURT: Well, if the - if the settling parties somehow seek to escape their releases that they've given through this settlement, then we'll have to deal with that if it happens.

MR. SEYMOUR: Well, my point in - was that we lose the preference dates if we have to come back here by dismissing it today. That's all. And that could well happen, because the releases are not effective if the good-faith finding doesn't exist as a precondition of the settlement, according to its terms.

THE COURT: Well, that assumes something that mayor may not happen. Based on what I know here and now, this case should be dismissed.

MR. COOK: Thank you, Your Honor.

THE COURT: All right.

MR. SEYMOUR: All right. My question is what if it does happen. That's all.

THE COURT: We'll deal with it then.

   A written order referring to the court's conclusions of law and findings of fact as stated on the record was entered on 26 June 2007.

Moore electronically filed her notices of appeal 4 July 2007.

## ARGUMENT

### I.    The Bankruptcy Court Did Not Correctly Apply 11 U.S.C., sec. 305

It is well established that the authority to dismiss a bankruptcy case under sec. 305 is an extraordinary power to be limited in application.  "Section 305(a) is applicable only in narrow circumstances."  Collier on Bankruptcy (15 ed., rev.) ¶3.05.1[1].

The statute requires that any dismissal be in the best interests of **both** the debtor and the creditors.  *In re Eastman*, *supra*, 188 B.R. 621, 624-25.  Significantly, the bankruptcy judge in *Eastman* had focused on the fact that the case was solely a two party battle in determining to dismiss – a factor used by the bankruptcy court in these cases – but the Bankruptcy Appellate Panel gave no credence to the two party dispute and reversed holding that, as the language of sec. 305 requires, the dismissal had to be in the interest of both the creditors and the debtor.  It found the bankruptcy judge in *Eastman* had only looked to the interests of the creditor.

In fact, it has been held that a dismissal cannot occur if it would "impair" the "interest of any of the parties involved."  *In re Benoya*, 136 B.R. 646, 648 (Bkrtcy. E.D. Va. 1992) citing *Farmer vs. First Virginia Bank* 22 B.R. 488 (E.D. Va. 1982).

When confronted with a motion for dismissal of an involuntary case based on a settlement by the petitioning creditors, the bankruptcy court concerns are the benefit of the settlement to the estate and equal treatment of similarly situated creditors.  *In re Warren*, 181 B.R. 136, 138 (Bankr.N.D.Ala. 1995); *In re Rajneesh Neo-Sannyas International Commune*, 59 B.R. 49, 51 (Bankr. D.Or. 1986).

In these cases, the bankruptcy court erred by considering that the Petitioners and other promissory note holders were in a superior position to Moore because they were creditors of AFCH and she was only a shareholder.  What the court missed was the fact AFCH has no assets.  Hatfield ROA, Doc. 15, Att. 2, p. 6, ¶33.

Only AFC, of which the Petitioners were not creditors, had assets.  With regard to Hatfield and his bankruptcy case, both Moore and the Petitioners were general creditors.

Clearly, Moore was discriminated against and her interests impaired because the Petitioners as general creditors of Hatfield are to receive payment, while Moore, who is also a general creditor of Hatfield, receives nothing.

Moreover, Moore is further damaged because she is a 50% owner of AFC, the source of the settlement funds which secure a full release for Hatfield from his guarantees, while the Settlement expressly continues Moore's liability.  Hatfield ROA, Doc. 13, Att. 1, p. 3 (carryover ¶) and AFCH ROA, Att. 1, p. 3 (carryover ¶).

**II.     The Court Failed to Give the Required Notice of the Dismissal Hearing**

The bankruptcy court began its errors by violating the requirement of sec. 305 that a suspension may not occur until after a notice hearing.  On 2 February 2007 before Hatfield had filed a schedule of creditors, the court *sua sponte* suspended both bankruptcy cases.  The result was Hatfield never prepared his schedules, and the notice of the June dismissal hearing was never given as required by Bankruptcy Rule 2002(a)(4).

The reporter's transcript shows the effort the bankruptcy judge made to explain his way around the mandatory requirement of rule 2002 for notice of any dismissal hearing.  RT, 22:6-13.

**III.     The Bankruptcy Court Failed to Consider the Settlement Was Contingent**

One of the objects of the power to suspend a bankruptcy case under sec. 305 is to allow for the resolution of contingencies which may alter the reasons  for a dismissal.

As the dialogue between Moore's counsel and the court at the end of the dismissal hearing indicates the settlement is contingent and uncertain.  By suspending the case, the court could have preserved the avoidance dates in the event that the contingent events, including payment of the $2 million settlement did not occur, as it has not.

*In re Rookery Bay, Ltd.* 190 B.R. 949, 951 (M.D. Fla. 1995) suspended a pending bankruptcy case so a state court appeal could be concluded.  The suspension protected preferential payment avoidance dates.  *Id.* at 951.  A point raised by Moore's counsel on the record at the dismissal hearing, but disregarded by the bankruptcy court.. RT, pp. 24-25.

1    There are potential preferential transfers of $960,000 or more which may be
2 avoided if the preference dates are maintained in this case.  Hatfield ROA, Doc. 25, pp.
3 2-3, ¶¶4-7.

4 **IV.    An Order for Relief Against AFCH Was Required By Its Default**

5    Moore called the bankruptcy court's attention to the fact that AFCH's default in
6 responding to the involuntary petition required the entry of an order for relief under the
7 Bankruptcy Code.

8    The following statement in Moore's opposition to the Petitioner's motion to
9 dismiss their AFCH petition was completely ignored by the bankruptcy court:

10    "As held in *Dahl vs. Key* (In re Key), 209 B.R. 937, 938 (10th Cir. BAP

11    1997):  "Since [the debtor] did not respond or answer timely, on the 21st

12    day after service of the summons *it was the Bankruptcy Court's obligation*

13    *to promptly enter the order for relief*." [Emphasis added.]

14    "The bankruptcy appellate panel in Dahl vs. Key made clear the mandatory

15    nature of sec. 303(h) by summarily reversing a dismissal of the involuntary

16    petition and ordering the bankruptcy court to enter the order for relief."

17    *AFCH ROA*, Doc. 15, 1:14-20.

18                            **Conclusion**

19    Dismissal is an extraordinary tool to be employed rarely and only when there is no
20 harm or impairment to either the debtor or any creditor.  The discrimination and damage
21 to Moore was not necessary and prevents the use of sec. 305.  Moreover, the conduct of
22 Hatfield and his preferential payments warrants the supervision of the bankruptcy court
23 to assure an equitable distribution of assets and a cessation of Hatfield's spending of
24 corporate assets for his personal benefit.

25                            JAMES H. SEYMOUR

26

27 Dated: 19 October 2007            */s/ James H. Seymour*
                                   James H. Seymour
28                                 Counsel for Appellant Jennifer M. Moore